UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JASON L. SANDERS,

        Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

        Defendants.
_____/

Case No. 1:20-cv-871

Honorable Janet T. Neff

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, Plaintiff's complaint against Defendants Washington, Macauley, Walzack, Bolton, Thompson, Arrendando, Unknown Party #3, and Unknown Party #4.

**Discussion**

I.  **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi E. Washington, Warden Matt Macauley, Deputy Warden Unknown Walzack, Resident Unit Manager Unknown Bolton, Assistant Resident Unit Manager Unknown Thompson, Captain Unknown Bennickson, Shift Commander Unknown Harrison, Food Service Director Unknown Klein, Regular Unit Officer Unknown Teelander, Sergeant Unknown Arrendando, Officer Unknown Cribs, Yard Officer Unknown Rictor, Unknown Party #1, Unknown Party #2, Health Services Employee Unknown Fuller, Unknown Party #3, and National Guard Unknown Party #4.

Plaintiff states that he suffers from asthma, sleep apnea, and vitamin deficiency anemia (VDA), which is a lack of healthy red blood cells caused by the lack of sufficient levels of vitamins. Plaintiff must take "shots and vitamins" to control his illness for the remainder of his life in order to keep his immune system functional. Plaintiff claims that he has been misconduct free since 2017 and has served his minimum sentence.

Plaintiff alleges that he and other prisoners are in danger of contracting COVID-19 at IBC because social distancing is impossible. Plaintiff claims that neither screening nor testing are 100% accurate in detecting the virus. Plaintiff also states that on May 18, 2020, staff at IBC who were testing prisoners for COVID-19 failed to change gloves, wash hands, or change protective gear while moving from cell to cell. Plaintiff states that prisoners who work sanitizing the facility are not given protective gear, and only receive water mixed with sodium for use in cleaning. Personal hygiene products have not been available in the unit and prisoners are using

low budget products, which are only given to prisoners by Defendant Thompson if a prisoner is indigent or in good favor.

Plaintiff complains that there are no educational posters informing prisoners of ways to prevent the spread of COVID-19 in the chow hall, health care services, classrooms, Chaplain's area, or gym. Plaintiff states that every time he has gone to the control center to pick up legal mail or to the health care waiting room, they were crowded with well over 10 people. Plaintiff claims that, due to the fact that there are no positive cases in the prison at the moment, things have become much more relaxed.

Between March 29, 2020, and August 10, 2020, Plaintiff kited Defendants Bolton and Thompson complaining about prisoners who were allowed to play hacky sack and touch football in groups of 12. On June 9, 2020, Defendant Bennickson staged the chow hall by placing prisoners six feet apart for a picture, which was to be sent to the Warden, MDOC Director, and Governor. This measure was taken to support the impression that he and Defendants Harrison, Klein, and Teelander were enforcing proper social distancing requirements. Plaintiff states that this is not the reality and that there are officers who refuse to wear masks or to properly cover their mouths and noses.

On July 6, 2020, Plaintiff went to the control center to get legal mail and the waiting area was crowded with 15 to 20 prisoners. Defendant Cribs came out and ordered everyone to move to one side of the small room. Plaintiff asked about social distancing and Defendant Cribs responded that he did not know or care. Plaintiff told Defendant Cribs that he was going to write a grievance on him and Defendant Arrendando, and Defendant Cribs responded that he would "beat [Plaintiff's] fucking ass." Defendant Arrendando failed to properly supervise Defendant Cribs to enforce safe social distancing.

From July 8, 2020, up until the first known positive case of COVID-19, Defendant Rictor refused to wear his mask. On August 21, 2020, Plaintiff was called to the control center for legal mail and had to wait in a small waiting room with 15 to 17 other prisoners. Every prisoner who asked about social distancing was sent back to his unit. After Plaintiff asked Defendant Unknown Party #2 about social distancing, Defendant Unknown Party #2 said, "Fuck your social distancing, you can stand outside in the heat." (ECF No. 1, PageID.12.) Defendant Unknown Party #1 also failed to enforce mandatory social distancing requirements.

Plaintiff states that throughout the period from March until the present day, officers and prisoners have continued to violate social distancing rules and have refused to wear their masks properly. On August 26, 2020, IBC reported 3 positive COVID-19 cases. On August 27, 2020, all prisoners in B-lower unit, including Plaintiff, were ordered to pack up and move to other cells in 6 unit in order to allow staff to quarantine prisoners who were suspected of having COVID-19.

Between August 25, 2020, to August 28, 2020, Defendants McCauley, Bennickson, and Klein allowed prisoners who were suspected of having COVID-19 to eat in the general population chow hall. On August 25, 2020, Defendant Klein ordered Plaintiff, who normally works in the back of the chow hall, to work in the dining room where prisoners who were suspected of being COVID-19 were eating. Plaintiff was not given any protective gear. Plaintiff told Defendant Klein about his illness, but she told Plaintiff that if he refused, he would receive a misconduct ticket, and that if he filed a grievance, he would be fired.

On August 27, 2020, Plaintiff went to the gym when Defendant Fuller yelled in a sarcastic manner that everyone had better be wearing their masks and social distancing. Plaintiff said that no one was social distancing in the gym, and that prisoners were in groups of 20 or more. Plaintiff stated that he was going to grieve the situation. Defendant Fuller told Plaintiff that if he filed a grievance, she was going to write a threatening behavior misconduct on him and have him

4

placed in punitive segregation. Defendant Fuller then yelled that somebody better come get Plaintiff because he was talking about filing grievances. At that point, another prisoner came and told Plaintiff to walk away because Defendant Fuller had a tendency to follow through on her threats. On August 28, 2020, the 300 building, which contains the gym, chapel, school, programs, psych office, and health care, was shut down due to more positive COVID-19 cases.

Plaintiff states that Defendants' conduct continues to violate his rights under the First, Fifth, and Eighth Amendments. Plaintiff seeks to be released from prison on parole or tether. Plaintiff also seeks an order requiring Defendant Macauley to comply with social distancing requirements. Finally, Plaintiff seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Request for Release from Prison

The Court notes that Plaintiff is seeking to be released from prison. Plaintiff is not entitled to such relief under § 1983. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed.

### IV. Respondeat Superior

Plaintiff fails to make specific factual allegations against Defendants Washington, Macauley, Walzack, Bolton, Thompson, Arrendando, Unknown Party #3, and Unknown Party #4, other than his claim that they failed to properly supervise their subordinates or to conduct an

investigation in response to his grievances.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Washington, Macauley, Walzack, Bolton, Thompson, Arrendando, Unknown Party #3, and Unknown Party #4 engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

**V.  Eighth Amendment**

Plaintiff alleges that Defendants, by not adhering to reasonable measures to protect against COVID-19, have violated and continue to violate his rights under the Eighth Amendment.  As noted above, Plaintiff states that he suffers from asthma, sleep apnea, and a vitamin deficiency anemia which affects his immune system.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-

7

46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The Eighth Amendment's deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from

8

liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), the Sixth Circuit squarely held that the significant risk posed by COVID-19 met the objective prong of the deliberate-indifference standard. *Id.* at 840. In addition, in evaluating the subjective component, the *Wilson* court concluded that, because the seriousness of the risk of COVID-19 was obvious, a court could reasonably conclude that Defendants were aware of the risk. *Id.* at 841 (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). As in *Wilson*, therefore, the remaining inquiry before this Court is whether Defendants, by their actions, "responded reasonably to th[is] risk." *Id.* at 841 (quoting *Farmer*, 511 U.S. at 844).

During the current COVID-19 pandemic, the MDOC has recognized the risk posed by COVID-19 and has taken significant measures to mitigate contamination and exposure, in order to limit the threat posed by COVID-19, including the following:

**Personal Protective Equipment, cleaning and mitigation measures**
- Michigan State Industries has produced masks for all prisoners and correctional facility staff to wear. Each employee and prisoner received three masks each and the masks can be laundered and worn again. Facility staff are also permitted to bring their own PPE, such as masks, gloves and gowns. Staff are expected to wear their mask during their entire shift and prisoners are expected to also wear their masks at all times, except while eating, sleeping or showering. Michigan State Industries is also manufacturing gowns, protective eyewear and protective suits.
- All MDOC staff transporting a prisoner on or off grounds are required to be dressed in full personal protective equipment (PPE), which is available for those employees.
- All facilities have received approval from the regional sanitation officer to use bleach during facility cleaning. Facilities have enhanced cleaning efforts and cleaning products are available to clean commonly-used areas and phones before and after use. Cleaning efforts have been doubled at facilities with vulnerable prisoner populations. We have increased our production of soap and ensured that all prisoner areas and bathrooms have plentiful access to soap. Soap has been distributed to prisoners and prisoners have been told that if they need more soap they only need to ask. Additional soap will be provided at no charge. CDC posters detailing proper hygiene practices have been posted in correctional facilities and have also been recreated digitally so they play on TV screens throughout our

9

- facilities. These are the same posters you will see in your community and throughout State of Michigan office buildings.
- Movements have been modified to help facilitate social distancing and the number of prisoners attending classes and meals has been reduced so prisoners can be seated farther apart. Prisoners and staff are frequently reminded of the need for social distancing and prisoners are instructed not to gather in groups on the yard. Activities such as basketball and weight pit have been suspended to encourage social distancing, as well. There are also markers and cones set up for med lines and in the chow hall as a visual reference for prisoners on how far apart they should stand.
- The department has been leading the nation when it comes to consistent testing of the prisoner population when they have symptoms. Following the completion Friday, May 22, of testing prisoners at Michigan Reformatory in Ionia for COVID-19, the Michigan Department of Corrections has completed its goal of testing every prisoner in its system.

*See* https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337 (last visited Sept. 23, 2020).

Further, the MDOC issued a COVID-19 Director's Office Memorandum (DOM) on April 8, 2020, and issued revised DOMs on the subject on May 26, 2020, *see* MDOC DOM 2020-30R2 (eff. May 26, 2020) (outlining specific precautions to be taken by staff members, including the use of personal protective equipment and hand sanitizer), May 27, 2020, *see* MDOC DOM 2020-30R3 (eff. May 27, 2020) (same), August 10, 2020, *see* MDOC DOM 2020-30R4 (eff. Aug. 10, 2020), August 25, 2020, *see* MDOC DOM 2020-30R5 (eff. Aug. 25, 2020), and August 27, 2020, *see* MDOC DOM 2020-30R6 (eff. Aug. 27, 2020). Among the newly adopted procedures, the DOM states that "[c]ell moves shall only be made if absolutely necessary (e.g., medical, PREA)." (*Id.*) Thus, the MDOC recognized the need for significant increases in sanitary practices and implemented those practices by way of policy.

Notwithstanding these official policies, however, Plaintiff claims that on May 18, 2020, staff at IBC who were testing prisoners for COVID-19 failed to change gloves, wash hands, or change protective gear while moving from cell to cell. Plaintiff states that prisoners who work sanitizing the facility are not given protective gear or cleaning fluid, and that personal hygiene

10

products have not been readily available in the unit, except for low budget products given to indigent prisoners or those in good favor with Defendant Thompson.  Plaintiff also complains about a lack of educational posters informing prisoners of ways to prevent the spread of COVID-19.  Finally, Plaintiff lists specific instances in which prisoners and staff violated social distancing and masking rules, and when Plaintiff or other prisoners complained, they were ignored or punished.

The specific instances alleged by Plaintiff include the failure of Defendants Bennickson, Harrison, Klein, and Teelander to enforce proper social distancing in chow hall, the failure of Defendants Cribs, Unknown Party #1, and Unknown Party #2 to maintain social distancing in the control center as well as threatening prisoners who complained, and Defendant Rictor's refusal to wear a mask.  In addition, Plaintiff states that throughout the period from March until the present day, officers and prisoners have continued to violate social distancing rules and have refused to wear their masks properly.  On August 27, 2020, after 3 cases of COVID-19 were reported, Plaintiff and the rest of his unit were ordered to pack up and move to other cells in order to allow staff to quarantine prisoners who were suspected of having COVID-19.  However, between August 25, 2020, to August 28, 2020, prisoners who were suspected of having COVID-19 were allowed to eat in the general population chow hall.

As noted above, on August 25, 2020, Defendant Klein ordered Plaintiff to work in the dining room where suspected COVID-19 positive prisoners were eating, but Plaintiff was not given any protective gear.  Despite having been informed about Plaintiff's illness, Defendant Klein told Plaintiff that if he refused, he would receive a misconduct ticket, and that if he filed a grievance, he would be fired.  On August 27, 2020, Plaintiff told Defendant Fuller that no one was social distancing in the gym, and that he was going to grieve the situation.  Defendant Fuller told Plaintiff that if he did, she would write a misconduct on him and have him placed in punitive

11

segregation. Plaintiff was told to leave the area. On August 28, 2020, the 300 building, which contains the gym, chapel, school, programs, psych office, and health care, was shut down due to more positive COVID-19 cases. Given what is known about the spread of COVID-19, the conduct of Defendants Bennickson, Harrison, Klein, Teelander, Cribs, Rictor, Fuller, Unknown Party #1, and Unknown Party #2 arguably implicates the Eighth Amendment. The Court concludes that Plaintiffs' Eighth Amendment claims against these Defendants are not clearly frivolous and may not be dismissed on initial review.

## VI. Retaliation

Plaintiff claims that Defendants Cribs, Klein, and Fuller retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With regard to Defendant Cribs, Plaintiff claims that on July 6, 2020, while in the control center, which was crowded with 15 to 20 prisoners, Defendant Cribs ordered everyone to move to one side of the small room with no regard for social distancing. When Plaintiff stated that he was going to write a grievance on him, Defendant Cribs threatened to "beat [Plaintiff's] fucking ass."

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Therefore, Plaintiff was engaged in protected conduct when he threatened to file a grievance on Defendant Cribs.

A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542. The Court concludes that Defendant Cribs' threat to physically assault Plaintiff satisfied the adverse-action requirement. Because Plaintiff clearly alleges that Defendant Cribs' threat was a direct response to Plaintiff's threatened grievance, he has successfully stated a retaliation claim against Defendant Cribs.

Plaintiff claims that both Defendants Klein and Fuller flouted rules of social distancing, which placed Plaintiff and other prisoners in danger of contracting COVID-19. When

13

Plaintiff indicated that he was going to file a grievance, he was threatened with misconduct tickets, job termination, and placement in punitive segregation. As noted above, Plaintiff's threat to file a nonfrivolous grievance is protected conduct. The threats by Defendants Klein and Fuller to punish Plaintiff with misconduct tickets, the loss of his job, and segregation are not *de minimis*. Therefore, the Court may not dismiss Plaintiff's retaliation claims against Defendants Klein and Fuller.

## VII.    Fifth Amendment

Plaintiff makes a conclusory assertion that he is being subjected to impermissible punishment in violation of the Fifth Amendment. The Double Jeopardy Clause of the Fifth Amendment precludes successive state proceedings that are essentially criminal in nature. *Breed v. Jones*, 421 U.S. 519, 527-28 (1974). The Fifth Amendment also protects a person's right against self-incrimination. *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1975). Plaintiff in this case failed to allege any facts which would implicate his rights under the Fifth Amendment. Therefore, Plaintiff's Fifth Amendment claims are properly dismissed.

## VIII.   Motion for appointment of counsel

Plaintiff has filed a motion for appointment of counsel (ECF No. 4). Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has

carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 4) will therefore be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington, Macauley, Walzack, Bolton, Thompson, Arrendando, Unknown Party #3, and Unknown Party #4 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fifth Amendment claims against the remaining Defendants: Bennickson, Harrison, Klein, Teelander, Cribs, Rictor, Fuller, Unknown Party #1, and Unknown Party #2. Plaintiff's Eighth Amendment claims against Defendants Bennickson, Harrison, Klein, Teelander, Cribs, Rictor, Fuller, Unknown Party #1, and Unknown Party #2, and his First Amendment retaliation claims against Defendants Cribs, Klein, and Fuller remain in the case.

An order consistent with this opinion will be entered.

Dated:   September 28, 2020                    /s/ Janet T. Neff
                                               Janet T. Neff
                                               United States District Judge